**Dolores REIFF**

v.

**PHILADELPHIA COUNTY COURT OF COMMON PLEAS.**

**Civ. A. No. 92–5004.**

United States District Court,
E.D. Pennsylvania.

July 15, 1993.

*material* to the exercise of judicial discretion in sentencing". 863 F.2d at 1155. (Emphasis added).

Alan B. Epstein, Jablon, Epstein and Wolf,
Philadelphia, PA, for plaintiff.

A. Taylor Williams, Administrative Office of Pa. Courts, Philadelphia, PA, for defendant.

## MEMORANDUM

ANITA BRODY, District Judge.

In this motion for summary judgment by the defendant Philadelphia County Court of Common Pleas, I am being called upon to decide whether a Pennsylvania court of common pleas is an "arm of the state" for Eleventh Amendment purposes and therefore entitled to sovereign immunity in the federal courts. I find that it is. Once granted sovereign immunity, the court cannot be sued in federal court without its consent under either ERISA or any state law claims, nor can it be sued at all under 42 U.S.C. § 1983. Eleventh Amendment immunity does not apply to claims under ADEA, however.

Plaintiff Dolores Reiff brought this action against the Court of Common Pleas of Philadelphia County on August 27, 1992, after she was terminated from her job as a social worker with the Adoptions Branch of the Family Division of the Court. Ms. Reiff alleges that the Court violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, as amended, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended, the Pennsylvania Human Relations Act ("PHRA"), Section 5(a), as amended, 43 P.S. § 951, *et seq.*, and the common law of Pennsylvania. Subsequently, the Court of Common Pleas filed this motion for summary judgment on all of the claims of the plaintiff.

In a motion for summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists if there is sufficient evidence for a reasonable jury to find for the nonmovant; the issue is material if it could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this context, the evidence must be viewed in the light most favorable to the non-movant.

*Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invest.*, 951 F.2d 1399, 1404 (3rd Cir.1991).

The material facts are as follows: Ms. Reiff, the plaintiff, first began working for the Family Court in 1957, and after several promotions, she became Chief of the Adoptions Branch in 1980. (Reiff Deposition, A–76, A–58). When the Adoptions Branch was merged with the Medical Branch in late 1989, Dr. M. Jean Sosnowski, Assistant Branch Chief of the Medical Branch, became Ms. Reiff's supervisor. Ms. Reiff remained in charge of the Adoption Branch, however. (Plaintiff's Answer to Motion for Summary Judgment, P. 6). In May, 1991, Ms. Reiff, then fifty-five years old, was informed that she was being terminated as part of a budgetary staff reduction. (Reiff Deposition at A–158–59). Ms. Reiff's last day of work at the court was in June, 1991. (Plaintiff's Answer at 6).

The defendant claims that it sought to eliminate employees who were least productive and who held positions which could be eliminated without disruption of the unit, and it claims that Ms. Reiff fit this description. (Defendant's Memorandum of Law in Support of Motion for Summary Judgment, p. 12). Ms. Reiff, however, consistently received excellent evaluations and was never disciplined or criticized about her work during her thirty-four years with the court. (Plaintiff's Answer at 5–6). Within six months after the plaintiff's dismissal, Andrea Hoffman Jelin, a forty-one year old Deputy Court Administrator, was given Ms. Reiff's position. (Plaintiff's Answer at 8).

At the time the plaintiff was fired the only other social worker in the Adoptions Branch, Bernadine McLaughlin, thirty-seven, was retained. (Plaintiff's Answer at 16). The Family Court let sixty-nine employees go during the staff reduction; forty-seven of them were over the age of forty, and thirty of those forty-seven were over fifty. (Plaintiff's Answer at 17).

## DISCUSSION

### A. Eleventh Amendment immunity

The Eleventh Amendment of the United States Constitution provides that:

The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Sovereign immunity also prevents a citizen from bringing a suit in federal court against his or her own state, unless the state consents to suit and thus waives its immunity. *Pennhurst State School v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984) (quoting *Employees v. Missouri Department of Public Health and Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973)). The bar operates not only when the state is the party named, but whenever "the state is the real, substantial party in interest." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).

■ "Eleventh Amendment immunity does not extend, however, to municipalities, counties, and other units of local government that are not agencies, instrumentalities, or arms of the state." *Mt. Healthy City School Dist. Board of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). The plaintiff claims that the Court of Common Pleas of Philadelphia County is part of the Philadelphia municipal government and thus not entitled to Eleventh Amendment immunity. In distinguishing between state and local entities for Eleventh Amendment purposes, the relevant determination is whether the entity is an "alter ego" of the state entitled to the protection of state immunity, or a distinct agency not so entitled. *Colon v. Hart*, 114 B.R. 390 (E.D.Pa.1990). *See also Flesch v. Eastern Pa. Psychiatric Inst.*, 434 F.Supp. 963, 976 (E.D.Pa.1977).

An important factor in deciding if an agency is the "alter ego" of the state is whether state law views the agency as a part of the "state." *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 572–73. *See also Kovats v. Rutgers, the State University*, 822 F.2d 1303, 1307 (3d Cir.1987). The state law of Pennsylvania views the courts of common pleas as an arm of the judicial branch of the state government. Article V, § 1 of the Pennsylvania Constitution provides:

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth court, courts of common pleas, community courts, municipal and traffic courts in the city of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts ... shall be in this unified judicial system.

In addition, 42 Pa.C.S.A. § 102 defines the "Commonwealth government" as including the courts and other officers and agencies of the unified judicial system. Relying on these provisions, a court in our district held that the Court of Common Pleas of Schuylkill County was a state entity for Eleventh Amendment purposes. *Pokrandt v. Shields*, 773 F.Supp. 758, 764 (E.D.Pa.1991). *See also Colon*, 114 B.R. at 893 (Philadelphia Traffic Court is an arm of the state for Eleventh Amendment purposes). *Cf. Teamsters Local 115 v. Pa. Labor Relations Board*, 619 A.2d 382, 384–85 (1992) (the courts of common pleas are part of the state government and employees of the courts of common pleas are employees of the state). Furthermore, the courts of common pleas, which derive their power from the state constitution, generally have unlimited jurisdiction within the Commonwealth, and thus their authority extends beyond mere county or district lines. *See* Pa. Const. Art. V, § 5.

■ Perhaps the most important factor in deciding whether an entity is an arm of the state, and thus entitled to Eleventh Amendment immunity, is whether the state would be responsible for satisfaction of any verdict in favor of the plaintiff. *Urbano v. Board of Managers*, 415 F.2d 247 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970). The Supreme Court has observed that the amendment's central goal is to prevent payment of federal court judgments from state treasuries. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir.1989) (citing *Edelman*, 415 U.S. 651, 94 S.Ct. 1347).

The plaintiff argues that since the counties currently provide the majority of the funding for the courts of common pleas in Pennsylvania, they should be viewed as a part of their

respective municipalities. Although most of the funding for the Common Pleas Court of Philadelphia County is currently provided by the municipality, Pennsylvania's Supreme Court held in *Allegheny County v. Commonwealth of Pa.,* 517 Pa. 65, 534 A.2d 760 (1987) ("*Allegheny I*"), that the state's constitution requires that the state alone finance the unified judicial system, including the courts of common pleas. The Court stayed its judgment to allow the state legislature to pass proper funding legislation, and as of this date no new funding scheme has been implemented. *See Allegheny County v. Commonwealth of Pa.,* —— Pa. ——, 626 A.2d 492 (Pa.1993). Despite the legislature's delinquency, however, it is clear from *Allegheny I* that the state would be constitutionally responsible for any judgment rendered against the Common Pleas Court of Philadelphia County, even if such judgment was in fact paid by the city. *See Robinson v. Court of Common Pleas of Philadelphia County,* 827 F.Supp. 1210, 1215–16 (E.D.Pa.1993).

With these factors in mind, I conclude that, as a matter of law, the Court of Common Pleas for Philadelphia County is an arm of the state, and consequently, the court is entitled to Eleventh Amendment sovereign immunity. *Robinson,* 827 F.Supp. at 1211.[1]

■ This Eleventh Amendment immunity may be overridden with respect to federal claims if two conditions are met. First, the case must be brought pursuant to federal legislation which articulates a clear Congressional intention to abrogate this sovereign immunity of the states. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985). Second, the statute must be "enacted under a power granted by the Constitution to Congress to regulate the activities of the states." *Davidson v. Board of Gov. of State Colleges & Univ.,* 920 F.2d 441, 442 (7th Cir.1990); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). One example of this power is the authority of Congress to enforce the provisions of the Fourteenth Amendment, mandated in section five of the Amendment itself. *Atascadero,* 457 U.S. at 238, 105 S.Ct. at 3145. Another example is the Commerce Clause, which allows Congress to restrict interstate trade activity. *Union Gas,* 491 U.S. at 15, 109 S.Ct. at 2281–82. Both of these Constitutional provisions expand the power of the federal government and at the same time contract the power of the states, allowing Congress to pass specific legislation abrogating Eleventh Amendment immunity. *Union Gas,* 491 U.S. at 16–17, 109 S.Ct. at 2282–83.

■ The plaintiff has brought three federal claims against the Court of Common Pleas. The first claim is based on ERISA. The plaintiff did not address the ERISA claim in her reply brief in opposition to summary judgment. It is clear, however, that ERISA did not intend to override the states' Eleventh Amendment immunity. *Thiokol Corp. v. Department of Treasury,* 987 F.2d 376, 382 (6th Cir.1993); *Atlantic Health Care Benefits Trust v. Foster,* 809 F.Supp. 365, 368 (M.D.Pa.1992). As a result, the ERISA claim must be dismissed without prejudice to the right of the plaintiff to bring this claim in state court. *See* 29 U.S.C. § 1132(e)(1).

■ With respect to the plaintiff's ADEA claim, another federal claim, the defendant seems to acknowledge that both of the conditions for overriding sovereign immunity are met. Congress clearly intended to lift the Eleventh Amendment bar when it passed the ADEA. *Davidson,* 920 F.2d at 443. The act, as amended in 1974, provides that any employer who violates the age discrimination law is liable for any legal or equitable damages caused by the discrimination. 29 U.S.C. §§ 626(b), (c). The statute defines "employer" to include "a state or political subdivision of a state." 29 U.S.C. § 630(b). Congress has clearly expressed its intention to hold states liable for violations of ADEA. *Davidson,* 920 F.2d at 443. *See also Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694 (1st Cir.1983). In fact, "[Congress] could not have made its desire to override the states' sovereign immunity clearer" without actually stating that it was abrogating the states'

---

1. The Court of Common Pleas does not intend to waive its sovereign immunity in this action. (Defendant's Memorandum in Support of Amended Motion for Summary Judgment at 60).

immunity, a specificity which is not required. *Davidson*, 920 F.2d at 443.

Moreover, the ADEA was a "valid exercise of Congress' powers under the Commerce Clause" of the United States Constitution. *Id.* (citing *EEOC v. Wyoming*, 460 U.S. 226, 243, 103 S.Ct. 1054, 1064, 75 L.Ed.2d 18 (1983)).[2] Thus, Congress had Constitutional authority to override the sovereign immunity of the states for violations of ADEA. Consequently, the Court of Common Pleas does not enjoy immunity in the federal courts from the ADEA claim.

■ The third federal claim is brought pursuant to 42 U.S.C. § 1983. The Court of Common Pleas is not subject to suit at all under § 1983, because states or "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes" are not "persons" within the meaning of § 1983 and consequently are not among those liable for violations of the civil rights statute. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989).[3] Consequently, summary judgment is granted in favor of the defendant with respect to the § 1983 claim.

■ This leaves only the plaintiff's state law claims. Although the Court would normally have supplemental jurisdiction over these claims, "neither pendant jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121, 104 S.Ct. at 919. Since Eleventh Amendment immunity bars the federal courts from adjudicating claims when, as here, the state is the real party in interest, *Id.* at 100–02, 104 S.Ct. at 907–08,

this Court may not exercise supplemental jurisdiction over the state claims. Consequently, the plaintiff's state law claims must be dismissed for lack of jurisdiction, without prejudice to the plaintiff to refile these claims.

## B.   ADEA claim

■ At this point, I am left only with the ADEA claim and the impact of the Supreme Court's recent opinion in *St. Mary's Honor Center v. Melvin Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), on summary judgment in discrimination cases.[4] In *St. Mary's*, the Court clarified the framework for discrimination cases established in *McDonnell Douglass* by holding that once the defendant puts forward evidence of a legitimate reason for its employment decision, the plaintiff must affirmatively prove that discrimination was the real motivation behind the decision. *St. Mary's* at ——, 113 S.Ct. at 2748–50. A plaintiff who proves only that the reasons offered by the defendant are pretextual does not necessarily carry this burden. *Id.*

■ Although proof that the proffered reasons were not the true ones is evidence of discrimination (along with the facts which establish the plaintiff's prima facie case), it is not the equivalent of discrimination, and does not automatically entitle the plaintiff to judgment in his or her favor. *Id.* Nonetheless, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.* Consequently, a plaintiff who offers reasonably sufficient evi-

---

**2.** Although the Supreme Court in *EEOC v. Wyoming* specifically left open the question whether the ADEA was also enacted under § 5 of the Fourteenth Amendment, the majority of the courts which have addressed the issue have answered this question in the affirmative. *EEOC v. Elrod*, 674 F.2d 601, 609 (7th Cir.1982); *Ramirez v. Puerto Rico Fire Service*, 715 F.2d 694 (1st Cir.1983). *But see Black v. Goodman*, 736 F.Supp. 1042 (D.Mt.1990).

**3.** Section 1983 provides in relevant part that "[e]very person who, under color of any [federal

or state] statute ... subjects or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights ... shall be liable to the party injured...."

**4.** Although *St. Mary's* is a Title VII case, "the analysis of Title VII cases has been applied to ADEA cases given the common purpose of the statutes and their nearly identical substantive provisions." *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 565 n. 11 (5th Cir.1983).

dence of pretext along with the elements of a prima facie case will survive a summary judgment motion.

I find that, viewing the evidence in the present case in a light most favorable to Ms. Reiff, material issues of genuine fact exist. As a result, the defendant's motion for summary judgment is denied with respect to the ADEA claim.

An appropriate order follows.

## ORDER

AND NOW, this 15th day of July, 1993, it is **ORDERED** that the Motion of the Philadelphia County Court of Common Pleas for Summary Judgment is granted in part and denied in part.

Summary judgment is granted in favor of the defendant and against the plaintiff on Count I. Counts III, IV, V, and VI are hereby dismissed without prejudice to the right of the plaintiff to file an action for these claims in state court. The motion of the plaintiff is denied with respect to Count II.