**John HUMENANSKY, Plaintiff,**

**v.**

**BOARD OF REGENTS OF THE UNIVERSITY OF MINNESOTA, Defendant.**

**Civil File No. 4–96–729.**

United States District Court, D. Minnesota, Third Division.

April 5, 1997.

Eric D. Satre, Clair E. Schaff, Connor & Satre, Minneapolis, MN, for plaintiff.

Stephen O. Plunkett, Rider Bennett Egan & Arundel, Minneapolis, MN, Tracy M. Smith, University of Minnesota, Minneapolis, MN, for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendant's Motion for Summary Judgment. For the following reasons, Defendant's Motion is granted.

## I. BACKGROUND

Plaintiff Humenansky began his employment with the University of Minnesota ("University") as a Senior Electron Technician in October 1969. Humenansky was laid off by the University on May 20, 1994. Humenansky then brought this suit alleging employment discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* Defendant has now moved for summary judgment with respect to all of Humenansky's claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). The court determines materiality from the substantive law governing the claim. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *See Id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *See Id.* at 248–49, 106 S.Ct. at 2510–11.

## III. DISCUSSION

Defendant makes two arguments in support of its motion for summary judgment. Defendant argues that Humenansky's claims are barred by the Eleventh Amendment. Secondly, Defendant argues that even if permissible, Humenansky fails to survive summary judgment because he cannot establish a prima facie case of discrimination or retaliation under the ADEA. The Court has previously ruled that material issues of fact exist with regard to the substance of Humenansky's claims. However, because the Court believes that the Eleventh Amendment bars Humenansky's claims, the Court dismisses his complaint.

The Eleventh Amendment provides that:

the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has held that the Eleventh Amendment prevents suits against governments as well as entities that effectively constitute the government unless those entities have given their consent to be suit. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Within the context of Eleventh Amendment immunity, the University of Minnesota is considered an "arm" of the state government. *See Treleven v. University of Minnesota,* 73 F.3d 816, 819 (8th Cir.1996).

In support of its motion, Defendant has cited to two cases in which courts have found that the ADEA does not effectively waive the States' Eleventh Amendment immunity. *See MacPherson v. University of Montevallo,* 938 F.Supp. 785, 789 (N.D.Ala.1996); *Coger*

*v. Board of Regents of Univ.*, No. 89–2374–GA (W.D.Tenn. Jan. 2, 1997) (unpublished). The Court agrees with the result reached in these cases.

In *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court outlined the inquiry for determining whether immunity has been waived:

> In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has "unequivocally expresse[d] its intent to abrogate the immunity," … and second, whether Congress has acted "pursuant to a valid exercise of power."

*Id.* at ——, 116 S.Ct. at 1123 (*citing Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). With regard to the first inquiry, whether Congress has indicated its intent to abrogate the States' immunity, the Supreme Court has discussed the level of specificity required. In *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985), the Court emphasized the importance of Eleventh Amendment immunity and the caution with which issues of abrogation of that immunity should be approached. The court stated that its "reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)). In light of the seriousness afforded Eleventh Amendment immunity, the Court held that "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself" *Id.* at 243, 105 S.Ct. at 3148.

In *Atascadero,* the Court addressed immunity in the context of the Rehabilitation Act of 1973 ("Act"). The relevant portions of the Act provided that remedies "shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance" Despite the fact that California was a recognized recipient of federal assistance, the Court found that more specificity was required to implicate the Eleventh Amendment. *Id.*

> A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically.

*Id.* at 246, 105 S.Ct. at 3149 (citations omitted).

This result was re-affirmed by the Court in *Dellmuth v. Muth,* 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). In *Dellmuth,* the Court determined that the Education of the Handicapped Act did not abrogate the States' Eleventh Amendment immunity. The Court discussed the three portions of the Act that were relevant to the immunity issue. The Act's preamble stated that "it is in the national interest that the Federal government assist State and local efforts to provide programs to meet the education needs of handicapped children in order to assure equal protection of the law." *Id.* at 228, 109 S.Ct. at 2400, (quoting 20 U.S.C. § 1400(b)(9)). The Act also permitted aggrieved parties to "bring a civil action … in any State court of competent jurisdiction in a district court of the United States without regard to the amount in controversy." *Id.* (quoting 20 U.S.C. § 1415(e)(2)). The Act was amended in 1986 to state that provisions that would reduce attorney's fees would not apply "if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." *Id.* (quoting 20 U.S.C. § 1415(e)(4)(G) (1982 ed., Supp. V)).

The Court found that these provisions did not "demonstrate with unmistakable clarity that congress intended to abrogate the States' immunity from suit.". *See Id.* at 231, 109 S.Ct. at 2402. Without reference to the Eleventh Amendment or sovereign immunity, the Court was unable to find the requisite clear intention. *Id.* As the Court stated:

> We recognize that the EHA's frequent reference to the States, and its delineation of the States' important role in securing an appropriate education for handicapped children, make the States, along with local

agencies, logical defendants in suits alleging violations of the EHA. This statutory structure lends force to the inference that the States were intended to be subject to damages actions for violations of the EHA. But such a permissible inference, whatever its logical force, would remain just that: a permissible inference. It would not the unequivocal declaration which, we reaffirm today, is necessary before we will determine that Congress intended to exercise its powers of abrogation.

*Id.*

Humenansky argues that the 1974 amendments to the ADEA indicate Congress's intent to abrogate the States' sovereign immunity. These amendments expanded the definition of an "employer" under the ADEA to include "a State or political subdivision of a State or any instrumentality of a State." 29 U.S.C. § 630(b)(2). Humenansky argues that this change clearly contemplated that States and localities would lose their immunity from suit. In addition, Humenansky argues that the amendment is analogous to the 1972 amendments to Title VII which abrogated States' immunity under the Fourteenth Amendment. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

In support of his contention, Humenansky cites *Hurd v. Pittsburg State University,* 821 F.Supp. 1410, 1413 (D.Kan.1993), *aff'd,* 29 F.3d 564 (10th Cir.1994). The *Hurd* court held that:

> Congress has made its intention to abrogate the states' Eleventh Amendment immunity crystal clear by providing that states which violate the ADEA are liable for legal and equitable relief.... This court believes that the ADEA's express authorization for the maintenance of suits against state employers adequately demonstrates congressional intent that the states' Eleventh Amendment immunity be abrogated in suits under the ADEA.

*Id.* (citation omitted). This same result was reached by the Seventh Circuit in *Davidson v. Board of Gov. of State Colleges & Univ.,* 920 F.2d 441, 443 (7th Cir.1990). In *Davidson,* the Circuit held that Congress had made its intentions clear:

> Unless Congress had said in so many words that it was abrogating the states' sovereign immunity in age discrimination cases—and that degree of explicitness is not required ...—it could not have made its desire to override the states' sovereign immunity clearer.

*Id.* (citing *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 22, 109 S.Ct. 2273, 2286, 105 L.Ed.2d 1 (1989) and *Dellmuth,* 491 U.S. at 231, 109 S.Ct. at 2402 (dictum)).

Other decisions cited by *Humenansky* reach results similar to *Hurd* and *Davidson. See Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 701 (1st Cir.1983); *EEOC v. Elrod,* 674 F.2d 601, 605 (7th Cir.1982). However, these cases were decided before the Supreme Court's strict tests for abrogating Eleventh Amendment immunity were enunciated in *Atascadero* and *Dellmuth.* While the Court believes that the reasoning of *Hurd* and *Davidson* courts has considerable force, the Court cannot find a principled distinction between the language used in the ADEA amendments and that held ineffective to abrogate States' immunity in *Dellmuth.* It is certainly a reasonable inference that Congress intended to abrogate that immunity by its inclusion of states in its definition of employers. However, there is no discussion of the Eleventh Amendment or sovereign immunity. As the Supreme Court indicated, inferences are insufficient to support a finding that abrogation was intended. *See Dellmuth,* 491 U.S. at 231, 109 S.Ct. at 2402. The ADEA lacks the "unequivocal declaration" deemed necessary.

Even if Congress has expressed its unequivocal desire to abrogate the States' Eleventh Amendment immunity, the Court is skeptical whether Congress intended to enact the ADEA pursuant to the Fourteenth Amendment. In *Seminole,* the Supreme Court held that the Commerce Clause was not valid authority for abrogating Eleventh Amendment immunity. —— U.S. at ——, 116 S.Ct. at 1124. The Court held that the Fourteenth Amendment was the only constitutional provision which gave authority to Congress to legislate over the States' immunity. *Id.*

In the present case, the authority for Congress's action is at best unclear. Humenansky argues that the Court should view the amendments to the ADEA in light of the 1972 amendments to Title VII, which, according to *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), where enacted pursuant to the Fourteenth Amendment. The Court finds the analogy to Title VII unpersuasive. The 1972 amendments to Title VII were adopted explicitly under the authority of the Fourteenth Amendment. Like the *Croger* court, this Court finds it telling that the 1974 ADEA amendments failed to mention the Fourteenth Amendment. Rather, the ADEA amendments were enacted as part of the Federal Labor Standards Act ("FLSA") which was passed pursuant to the Commerce Clause. It is much more plausible that Congress was acting jointly with the passage of the FLSA and ADEA amendments under the Commerce Clause than including the ADEA amendments under the same framework as the Title VII amendments passed two years prior. As the court in *MacPherson v. University of Montevallo* stated:

> [T]his court fundamentally disagrees with the notion that it slipped the collective minds of Congress to mention the Fourteenth Amendment in the 1974 amendments to the ADEA, but remember it in the 1972 amendments to Title VII.

938 F.Supp. at 789 n. 6. The Court finds additional support for its finding in the reasoning of the dissent in *EEOC v. Wyoming,* 460 U.S. 226, 258–61, 103 S.Ct. 1054, 1072–73, 75 L.Ed.2d 18 (1983). In that case, the dissent (Burger, C.J., Powell, and Rehnquist, JJ.) stated that Congress did not and could not have passed the ADEA pursuant to the Fourteenth Amendment. *Id.*

Other courts have split over the issue of whether the ADEA was enacted under the Fourteenth Amendment or the Commerce Clause. Several courts have held that the ADEA was passed pursuant to the Commerce Clause, *see MacPherson v. Univ. of Montevallo,* 938 F.Supp. 785, 788–789 (N.D.Ala.1996); *Black v. Goodman,* 736 F.Supp. 1042 (D.Mont.1990); *Farkas v. New York State Dept. of Health,* 554 F.Supp. 24 (N.D.N.Y.1982), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985), while other courts, including some circuits, have held that Congress acted pursuant to the Fourteenth Amendment, *see Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir. 1984); *Ramirez,* 715 F.2d at 700–01; *Hurd,* 821 F.Supp. at 1413. This Court shares the view of the *Croger* and finds that Congress did not act pursuant to the Fourteenth Amendment in enacting the ADEA. As such, Plaintiff's complaint is dismissed.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 17) is GRANTED;

2. Plaintiff's Complaint (Clerk Doc. No. 1) is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.